IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| KHRL GROUP, LLC | § | Case No. 19-50390 |
| | § | |
|    Debtor | § | |
|        And | § | |
| In re: | § | Chapter 11 |
| | § | |
| PAPA GRANDE GOURMET FOODS, LLC | § | Case No. 19-50391 |
| | § | |
|    Debtor | § | |
| | § | Joint Administration Requested |

**EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
AUTHORIZING DEBTORS TO USE CASH COLLATERAL AND GRANTING
<u>ADEQUATE PROTECTION TO PRE-PETITION LENDER</u>**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**DEBTORS HAVE REQUESTED EMERGENCY CONSIDERATION OF THIS MOTION AND HAS REQUESTED THAT A "FIRST DAY" HEARING BE HELD ON THIS MOTION AT THE COURT'S EARLIEST CONVENIENCE. IF THE COURT IN FACT SETS THIS MOTION FOR AN EXPEDITED "FIRST DAY" HEARING, THEN ONLY ATTENDANCE AT THE HEARING IS NECESSARY TO PRESERVE YOUR RIGHTS**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

      KHRL Group, LLC ("KHRL"), and Papa Grande Gourmet Foods, LLC ("Papa Grande"), the above-captioned debtors and debtors-in-possession (together, the "Debtors"), the above-captioned debtors and debtors-in-possession (together, the "Debtors"), file this Emergency Motion for Interim and Final Orders Authorizing Debtors to Use Cash Collateral and Granting Adequate Protection to Pre-Petition Lender (the "Motion") and in support thereof respectfully shows the Court as follows:

# I. PROCEDURAL BACKGROUND

1. On February 25, 2019, (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (as amended, the "Code"). The Debtors continue to manage and operate their financial affairs as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No creditors' committee has yet been appointed in this case by the United States Trustee. No trustee or examiner has been requested or appointed.

# II. JURISDICTION AND VENUE

2. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(A) and (M). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408(1) because the Debtors' place of business has been located in this district for more than 180 days preceding the filing of this bankruptcy case.

# III. FACTUAL BACKGROUND

3. Garcia Foods was founded in San Antonio, Texas in 1956 by Andy Garcia. He began producing barbacoa in his garage with a fifteen-dollar investment and sold the barbacoa from his truck for thirty dollars. Garcia Foods was always a family owned and operated business. Kenny Garcia, Andy's son, grew up in the family business as one of six children. With drive, hard work and determination, he took over day-to-day operations of Garcia Foods in 1999.

4. In 2009, Kenny Garcia left Garcia Foods and entered a new venture with his wife Hilda Garcia. This new venture was called Papa Grande Gourmet Foods ("Papa Grande") and was filed as Papa Grande Gourmet Foods, LLC in 2012. He began developing new products

including fully cooked items. In 2014, Kenny Garcia purchased Garcia Foods, Inc. from his father. When Kenny purchase the assets of Garcia Foods, Inc. he merged it with his new business Papa Grande. Kenny and Hilda also started the entity KHRL Group, LLC in 2014 to hold the real estate purchased from Garcia Foods, Inc. Papa Grande currently has eighty-eight employees. The main office and manufacturing plant is located at 1802 Jackson Keller, San Antonio, Texas 78213.

5. However, with Kenny's absence from Garcia Foods over the years prior to the sale, the sales of Garcia Foods, Inc. had significantly decreased. When Kenny purchased the company from Andy Garcia, the decrease in sales created an unsuspected uphill battle for Kenny and Hilda Garcia. Even with the decrease in sales, Papa Grande always paid their notes to the primary secured creditor. However, Papa Grande was unable to pay the 2017 property taxes that came due in January of 2018, and it entered into a payment agreement with Bexar County.

6. In fall of 2018, Papa Grande anticipated a stronger tamale season, which typically begins in October and planned to use the strong tamale season revenue to catch up its past due property taxes and pay the taxes coming due in January 2019. Unfortunately, the company ran into a cash crunch and were unable to purchase sufficient raw material to fully capitalize on the holiday season. Papa Grande estimates that it lost out on $1 million of revenue and $250,000 of profit during the holiday season, which likely would have been sufficient to bring the property taxes current.

7. Transpecos Banks SSB ("TPS"), funded Kenny Garcia's purchase of Garcia Foods from his father. The funding came by way of three cross collateralized loans; one loan for the real estate; one loan for equipment; and one loan was a line of credit for paying Andy Garcia. The approximate outstanding balances on these loans are as follows:

a. Real Estate Loan:   $4.5 million at 6.25%.

   b. Equipment Loan:   $732,000 at 5.75%

   c. Line of Credit:   $716,000 at 5.75%

8. Papa Grande has various secured debts over vehicles and equipment with outstanding principal balances totaling approximately $675,000.

9. Bexar County Appraisal District is owed the following approximate amounts:

   a. FF&E:   $49,000 (Papa Grande)

   b. Real Estate Taxes:   $61,000. (KHRL Group)

10. Debtor has approximately $1.6 million in general unsecured debt.

11. In September of 2018, the TPS line of credit matured and Papa Grande was unable to repay the entire note. In November 2018, TPS demanded Papa Grande pay the line of credit and cure the property tax default. In December 2018, TPS and Papa Grande agreed to renew the line of credit for three years. At this point in time, Papa Grande understood it was no longer in default of any of the notes. In February 2019, TPS claimed the notes had all been accelerated and moved to appoint a receiver to take control of the Papa Grande business. Considering the total property tax default was less than $200,000 compared to Papa Grande's $13 million in revenue, Debtor believed the request for receiver was unwarranted, which ultimately resulted in this bankruptcy filing.

12. Papa Grande Gourmet Foods, LLC have and continue to be a strong example of individuals working hard and building a business that can continue to last for generations to come. Papa Grande is taking strong corrective action to insure a successful reorganization. First, Papa Grande has reduced its payroll by approximately $400,000 annually. Second Papa Grande reduced its unsecured debt by $400,000, and is working on substantially reducing

operating costs.  Finally, Papa Grande is working on new income streams by expanding its area of operation.

13. Debtor contends TPS is fully secured.  In fall of 2018, TPS ordered appraisals of all of Debtors' assets.  The TPS appraisal indicated the real estate located at 1802 Jackson Keller, San Antonio, Texas 78213, is valued at $5.4 million while the debt on the land is approximately $4.5 million.  The equipment was appraised at $2.6 million while the line of credit and equipment loans total under $1.5 million.  In addition to these hard assets, Papa Grande has approximately $450,000 in outstanding receivables.  With the Debts being cross collateralized, TPS is over secured by approximately $4 million dollars.

### IV. EXPEDITED BASIS FOR RELIEF

14. By this Motion, Debtors seek authority to use Cash Collateral while they reorganize and continues operating their business operation.  Prior to filing this petition, the Debtors obtained the three TPS loans stated above.  While the loans are cross collateralized, the primary borrower on the Equipment Loan and Line of credit is Papa Grande and on the Real Estate Loan the borrower is KHRL.  As collateral security for its obligation, TPS was granted security liens over all Debtors' assets.

15. Papa Grande is an operating chapter 11 debtor.  KHRL is a single asset chapter 11 debtor.  Debtors contend that replacement liens and adequate assurance payments from operations of Papa Grande and allocated rent for KHRL would adequately protect TPS during what Debtors believe will be a short bankruptcy process.  Debtors request authority to begin adequate protection payments toward the Line of Credit and Equipment loans in the amount of $6940.00 monthly to be allocated pro rata between the two loans.  The $6940.00 is the approximate monthly interest accrued on the two loans and would be applied first to interest and

then to principal on the notes. The first payment would be due and payable March 10th, with each future payment due on the 10th of the month or the next business day thereof.

16. KHRL is a single asset bankruptcy in which TPS, according to its own appraisal is 20% over secured not taking into account the cross collateralized equipment or receivables. Therefore, in accordance with the bankruptcy code, KHRL would make its first adequate assurance payment in the amount of $23,440 on May 27, 2019, and then continue making monthly payments in this amount on the 27th of each following month or the next business day thereof. The $23,440 is the approximate monthly accrued on the Real Estate loan and would be applied first to interest and then to principal on the note.

17. In addition, Papa Grande shall set up two debtor in possession escrow accounts for personal and real estate property taxes and begin escrowing the taxes on March 15, 2019. Papa Grande shall deposit $6500.00 monthly into the real estate tax escrow account and $3250 into the personal property escrow tax account each month. Debtors shall maintain property and casualty insurance over all TPS encumbered property and add the United States Trustee as a notice party to each policy.

18. Next, Debtors would agree to only use cash collateral pursuant to a budget, which is attached as Exhibit A (the "Budget"), with a 10% variance and the ability to apply any un-used budgeted funds at its discretion (except additional payments to insiders outside the proposed officer salaries). TPS' prepetition liens will be adequately protected by the replacement liens to the same extent and priority as their prepetition liens, but only to the extent of the use by Debtors of the cash collateral on a post-petition basis.

19. Debtors shall keep all income in separate debtor in possession accounts.

20. Debtors move this Court on an expedited basis for authorization to use cash collateral and for a preliminary hearing regarding the same in order to satisfy the ordinary and necessary expenses of operation. An expedited preliminary hearing is necessary because some of these expenses need to be paid before expiration of the fourteen (14) day notice period provided for in Bankruptcy Rule 4001(b)(2). The primary expenses which needs to be paid during this time period is insurance and pre and post-petition employee wages as they come due. A complete listing of the expenses which are projected to be paid are shown on Exhibit A. Papa Grande pays its employees every Friday and the next payroll is due March 1, 2019.

## V. GROUNDS FOR RELIEF

21. The Debtors need to use cash collateral to fund post-petition operations. In the conduct of Debtors' business they must purchase supplies and pay its regular operating expenses. Debtors have regular business to continue their operations such that they operate at a net profit sufficient to preserve the ongoing value of their business.

22. The importance in cases like these of access to cash was recognized in *In re George Ruggieri Chrysler-Plymouth, Inc.*, 727 F.2d 1017 (11th Cir. 1984). The court in that case noted, "A debtor, attempting to reorganize in business under Chapter 11, clearly has a compelling need to use 'cash collateral' in its effort to rebuild." Id. At 1019. The Debtors are hopeful that the secured lender will consent to the proposed use of cash collateral, subject to receiving a replacement lien and other protections as provided in the agreed order. To the extent they do not consent, however, the Court may authorize the use of cash collateral by the Debtors provided that the Court determines that any objecting entity's interest is adequately protected. 11 U.S.C. § 326(c)(2)(B) and (e).

23. Section 361 sets forth three non-exclusive examples of what may constitute adequate protection. They include "providing the secured creditor with "additional or replacement liens" and other relief that provides the secured creditor with the "indubitable equivalent" of the secured creditor's interest in the cash collateral. Legislative history indicates that Congress intended to provide courts with the flexibility to grant relief on a case-by-case basis.

24. Pursuant to this motion, Debtors propose to grant TPS a replacement lien on post-petition cash collateral to the extent its interest is secured by Debtors' assets, a recognized method for providing adequate protection as specified under sections 361 and 363. Additionally, Debtors propose paying TPS adequate assurance monthly payments as stated above.

25. Without access to cash collateral, Debtors' operations will cease, it will not be able to make its insurance payments, and will not be able to pay its 88 employees. The going concern of Debtors' assets will plummet and insiders and employees will quit. From that standpoint, the overall collateral position of the secured creditor will deteriorate markedly, more than offsetting any erosion of the cash collateral.

## VI. THE REQUESTED RELIEF SATISFIES BANKRUPTCY RULE 6003

26. Debtors submit the facts cited herein, filed contemporaneously herewith, illustrate that the relief requested is necessary to avoid immediate and irreparable harm to Debtors and its estate. Based on the foregoing, Bankruptcy Rule 6003 has been satisfied.

## VII. CONCLUSION

WHEREFORE, the Debtors request that the Court (a) set an expedited preliminary hearing on this Motion; (b) enter a preliminary order authorizing the use of cash collateral to pay the expenses shown on Exhibit "A"; (c) grant TPS monthly adequate assurance payments in the

amount of $6940.00 per month beginning March 15, 2019 for the Equipment Loan and Line of Credit and $23,440 beginning May 27, 2019 for the Real Estate Loan, and a replacement lien on all inventory, equipment, accounts receivable, real estate, and general intangibles from the Debtors' estate acquired after the bankruptcy filing to the same extent, validity, and priority as existed on the date the Chapter 11 case was filed, and to the extent of cash collateral that is actually used; (d) set a final hearing on this Motion after expiration of the fourteen (14) day notice period required by Bankruptcy Rule 4001(b); and (e) grant such other and further relief as is just and proper.

Dated: February 25, 2019

                Respectfully submitted,

        By:   /s/ Ronald J. Smeberg                      .
                RONALD J. SMEBERG
                State Bar No. 24033967

                SMEBERG LAW FIRM, PLLC
                2010 West Kings Highway
                San Antonio, Texas 78201
                210-695-6684 (Tel)
                210-598-7357 (Fax)
                ron@smeberg.com
                ATTORNEY FOR DEBTORS